UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF
FLORIDA

CASE NO. 17-20604-CR-ALTONAGA

**UNITED STATES OF AMERICA,**

      v.

**SERGIO ALEXANDER PAREDES JEREZ,**
    a/k/a **Bendeceido,**

    **Defendant.**

_____/

**<u>SENTENCING MEMORANDUM ON BEHALF
OF SERGIO ALEXANDER PAREDES JEREZ</u>**

ALEXEI SCHACHT
Attorney at Law
123 West 94th Street
New York, NY 10025
Telephone: (646) 729-8180
Fax: (212) 504-8341

*Attorney for Defendant*

## PRELIMINARY STATEMENT

On October 12, 2017, the defendant, Sergio Paredes, pleaded guilty to one count of conspiracy to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 963. The defendant is scheduled to appear before the Court for sentencing on October 29, 2021.

We respectfully submit this memorandum to address the factors we ask the Court to consider when determining Sergio's sentence. *First*, we ask the Court to consider the defendant's life circumstances.

*Second*, without minimizing my client's culpability or responsibility, we ask the Court to consider the circumstances surrounding Sergio's participation in the conduct at issue in this case; and further that his conduct be compared to that of his co-defendants.

*Third*, we ask the Court to consider my client's on-going cooperation with the Government in the case.

Finally, in light of the provisions of 18 U.S.C. § 3553(a), we respectfully ask the Court to impose a sentence below the guideline range in the probation report and the plea agreement, one no more than 120 months.

## THE DEFENDANT'S LIFE

Sergio Alexander Paredes Jerez was born in Bolivar, in Colombia, on February 8, 1989, to Bartolome Paredes Camacho and Gladys Cecilia Jerez Ariza, who are both 59 years old. His father is a retired police officer and his mother is a homemaker. They now reside in Bucaramanga, Colombia. The defendant noted his parents were unmarried at his birth, but got married when he was two years old, and remain married.

The defendant has four siblings. Sergio's father "basically abandoned" his family, he was unfaithful, as he "had a lot of women" and "often neglected [his family]," according to the probation report. As a result, the defendant went without food on occasion, until he began working at age 13. Sergio has two children from previous relationships and is now involved in a committed long-term

relationship with Marlen Rocio Micolta Segura whom he thinks of as his wife. Ms. Micolta lives in Tumaco, Colombia and together, they share one daughter, Lina, age seven, who resides with her mother. The defendant has also helped co-parent Ms. Micolta's son, Juan David Yanos Micolta, age 15, since he was 3 years old. While all the children are in good health Ms. Micolta Segura has been suffering from depression, anxiety, and chronic migraines since his arrest. In addition, the family has suffered terribly from a financial perspective. Presentence Investigation Report ("PSR") ¶¶ 54-59. I regularly speak to Ms. Micolta and can tell that she is anxious and financially strapped.

Notwithstanding the events that bring him before this Court, Sergio appears to have a made a wonderful family with Ms. Micolta. His statement of acceptance of responsibility is heartfelt and sincere I am sure. Sergio is funny and quick to smile and I believe him when he says that he will never again do this to his family.

## THE OFFENSE CONDUCT

The case primarily concerns four separate loads of drugs that authorities seized. On about January 4, 2017, a seizure of 831-kilograms occurred. According to the Department of Probation, and reading into its factual summary in the PSR, the codefendant Castro Valencia appears to have been the main coordinator of that load (PSR: ¶ 9).

On about January 24, 2017, there was a 656-kilogram seizure. According to the probation department, Sergio was recorded discussing the load and who the owners were (not the defendant). On the other hand, according to the PSR, co-conspirators are also recorded discussing the fact that co-defendant Salazar Villareal owes money to cover expenses since he was involved in the ownership group and in organizing the load (PSR: ¶¶ 11-13).

On February 17, 2017, another load, this time for 897 kilograms, was seized. The probation department does not describe my client as having any role in this load (PSR: ¶¶ 14-18).

On about March 30, 2017, a final load of 952 kilograms was recovered. The probation

department's description of this load shipment says little about Sergio's role but makes clear that co-defendant Falla Ramirez is the leader in the conspiracy and basically implies that co-defendant Rosero Mera is really his second-in-command (PSR: ¶¶ 19-23).

## THE APPLICATION OF THE SENTENCING GUIDELINES

In the PSR, the Probation Office computed Sergio's total adjusted Offense Level as a 38, reflecting a Base Offense Level of 38 because the case involved more than 450 kilograms of cocaine, *see* U.S.S.G. § 2D1.1(a)(5) plus a 3-level increase for being a manager or supervisor, *see id.* § 3B1.1(b), and a minus three levels for Sergio's acceptance of responsibility. *See* U.S.S.G. § 3E1.1(a) and (b). This results in a total offense level of 38. Sergio is a first-time offender and thus falls in Criminal History Category I, *see* PSR ¶: 75, resulting in an advisory guidelines range of 235 to 293 months.

In the plea agreement, the parties agreed to only a two-level upward role adjustment and an advisory guidelines range of 210-262 months (PSR: ¶¶ 2-3).

Finally, the defendant is in the process of hopefully earning a motion for a sentence reduction pursuant to Rule 35 of the Federal Rules of Criminal Procedure.

## A DOWNWARD VARIANCE IS WARRANTED UNDER 18 U.S.C. § 3553(a)

Following *United States v. Booker*, 543 U.S. 220 (2005), it is clear that the Guidelines are only advisory. *See United States v. Hossain*, No. 15-cr-14034-DMM, 2016 WL 70583, at *4 (S.D. Fla. Jan. 5, 2016) ("After Booker, there is no presumption that the Guideline sentence should apply . . . ."). "Although the Guidelines remain 'the starting point and the initial benchmark' for sentencing, a sentencing court may no longer rely exclusively on the Guidelines range; rather, the court 'must make an individualized assessment based on the facts presented' and the other statutory factors." *See Beckles v. United States*, 137 S. Ct. 886, 894 (2017) (citing *Gall v. United States*, 552 U.S. 38, 49, 50 (2007)).

The Guidelines "continue to play an important role in sentencing, but they do not and cannot play a decisive one." *United States v. Matchett*, 837 F.3d 1118, 1121 (11th Cir. 2016). Rather, "[t]he

4

Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable." *Nelson v. United States*, 555 U.S. 350, 352 (2009) (emphasis in original). Indeed, the Court "may vary from Guidelines ranges based solely on policy considerations, including disagreements with the Guidelines." *Kimbrough v. United States*, 552 U.S. 85, 101 (2007) (quotations and citations omitted).

Under § 3553(a), the district court must impose a sentence "sufficient, but not greater than necessary," (a) "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" (b) "to afford adequate deterrence to criminal conduct;" (c) "to protect the public from further crimes of the defendant;" and (d) "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2); *see United States v. Ross,* 755 Supp. 2d 1261, 1262 (S.D. Fla. 2010).

In addition to these mandatory factors, § 3553(a) also requires the district court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant;" "the kinds of sentences available;" the Guidelines and any policy statements; "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;" and "the need to provide restitution to any victims of the offense." We respectfully ask the Court to consider these factors, and to impose a sentence of no more than 120 months in prison. Below is a more detailed analysis of two of these factors.

### The Defendant's History and Characteristics

Section 3553(a)(1) directs the Court to consider the history and characteristics of the defendant. As described above, Sergio had a highly disadvantaged upbringing, both because his father abandoned him and he had to start working at age 13 but also because he lacked a good formal education. As I described above, and as he informed the probation department, he deeply regrets his conduct and began a process of cooperating with the Government, telling the truth about his criminal activity and this is part of how he hopes to make amends for his crime.

5

In addition, Sergio has a powerful network of people in his life who support him and whose love and care make it less likely that he will again find himself before the Court. The attached letters in Spanish, along with English translations, attest to this fact (Exhibit A).

### The Need to Avoid Unwarranted Sentence Disparities among Defendants With Similar Records who have been found Guilty of Similar Conduct

We objected to ¶ 41 of the PSR because the defendant is being treated unfairly in comparison to several of his co-defendants. By the correct legal standards, all of the defendants in the case are probably deserving of upward role adjustments. Specifically, three co-defendants who were previously sentenced (Luis Andres Jilon Romo, Wilber Roberto Castro Valencia and Alex Salazar Villareal), received no role adjustment at all and "safety-valve" treatment while my client is apparently being punished for being more honest than them and for accepting a two-level role adjustment not realizing that he was being treated unfairly.

As explained at the plea hearing, the defendant helped to coordinate the delivery of large cocaine shipments but he was not himself an owner of the drug loads. In addition, he did not possess a firearm in connection with the offense, this is his first offense, he told the complete truth about it and did not use or threaten with the use of violence.

By contrast, defendant Jilon Romo, according to the extradition affidavit in the case (Exhibit B), "controlled logistics" and handled "all aspects" of preparing drug loads for shipment, according to the extradition affidavit. On its face, this describes a manager or supervisor of criminal activity involving more than five people. He also handled "security" for the drug loads – security in large cocaine transportation business necessarily involves the use of firearms in case anyone tries to steal the valuable cargo, or for other reasons.

Defendant Wilber Roberto Castro Valencia negotiated prices with Mexican drug customers of these Colombian drug sellers. Castro Valencia was actually a drug owner, above my client and Jilon Romo and defendant Salazar Villareal in the hierarchy of drug conspirators, that is how he was able to

negotiate prices since employees and transporters do not have discretion to negotiate prices. Just as importantly, Castro Valencia obviously used and threatened the use of violence since he held people as "collateral" - according to the extradition affidavit - and this is a euphemism for a kidnapping, These kidnapped people (representatives of the buyers) were not free to leave until the drugs arrived safely; they were held until the drugs could be confirmed as safely received by the buyers – this is normal the international drug business.

Paragraph 14 of that affidavit is the most remarkable as it describes defendant Alex Salazar Villareal as a "leader" and "manager" of the conspiracy, yet he received no role adjustment at all at sentence.

Tellingly, the PSR itself, as discussed above in The Offense Conduct section of this Memorandum, essentially describes Castro Valencia and Salazar Villareal as having a higher level of authority than my client. Yet the probation department's addendum only responds to my objection with a bizarre response *that supports my argument*:

> Wilber Roberto Castro Valencia and Alex Salazar Villareal received no role adjustment, they were responsible for the maritime shipments of multi-kilogram loads of cocaine on go-fast vessels rather than the logistics of finances and shipping routes.

Assuming that is correct (and I believe that they were even more involved than that narrative allows), it is the description of managers of criminal activity. In other words, it would really be an injustice for my client to receive a longer prison sentence than these similarly situated co-defendants. And there are simply no facts before the Court to justify it.

## CONCLUSION

Sergio fully acknowledges his role in the conspiracy and understands the serious nature of the crime that he has committed. He deeply regrets the harm that he has caused to society and his own family. We do not minimize Sergio's responsibility for his role in the conspiracy, but we respectfully request that the Court impose a sentence that is fair in comparison to codefendants and no more than necessary to achieve the goals of sentencing.

Dated: October 27, 2021

                    Respectfully submitted,

                    By:   /s/ Alexei Schacht

                    Alexei Schacht (*pro hac vice*)
                    Alexei Schacht Attorney at Law
                    Email: alexei@schachtlaw.net
                    123 West 94th Street
                    New York, New York 10025
                    Telephone: (646) 729-8180
                    *Attorneys for Defendant*

                    /s/Scott Kalisch
                    SCOTT KALISCH
                    435 SOUTH OREGON AVENUE, STE. 104
                    TAMPA, FLORIDA 33606
                    TEL 305 669-0808
                    FLORIDA BAR #367877

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Sentencing Memorandum on Behalf of Sergio Paredes was served via ECF on October 27, 2021, on all counsel of record on the service list.

/s/ Alexei Schacht

Alexei Schacht

/s/Scott Kalisch
SCOTT KALISCH